## LIQUOR PROSECUTIONS WITHOUT DUE PROCESS OF LAW.

### Probate Court of Montgomery County.

STATE EX REL. GEDE BURNETT, CLARENCE CRITZ, FRANK HICKMAN, GUY MULLENIX, GEORGE FLORA, CARY JUDY AND FRED EILER, RELATORS, V. LON NEUTZENHOLTZER, SUPT. DAYTON WORK HOUSE, RESPONDENT.

Decided, July 1, 1927.

*Liquor Courts whose Methods open Wide the ·Door of Habeas Corpus—Due Process of Law Ignored—Invalid Judgments by a Mayor who Worked for a Salary and not for Fees.*

Where a mayor entertained jurisdiction in 724 criminal prosecutions during his term of office, based on arrests made in all parts of the county; where court was held from 10:30 p. m. to 1 a. m., and accused persons who desired counsel were told the lawyers were all in bed, and when they asked for a trial were told they were having one then and didn't know it; where the local ordinance provided that all fines assessed should go to the city, instead of one-half to the state, and public officials were a.ding in filling up the city treasury by bringing cases before this mayor, there was a denial to the accused of due process of law, and persons convicted under such proceedings are entitled to release by habeas corpus, notwithstanding the mayor received no part of the fees assessed, but was paid·a salary for his services.

ROUTZOHN, J.

All relators, above named, were committed by the mayor of Washington C. H., Ohio, to the workhouse of the city of Dayton for separate, alleged violations of the Crabbe Act.

The contention of their counsel is that they are unlawfully restrained of their liberty and entitled to release by virtue of the decision of the Supreme Court of the United States in the case of *Tumey* v. *State of Ohio.*

This court in a decision of date March 29th, 1927, in cases of *State ex rel Canfield and Duckett, infra,* by virtue of the Supreme Court decision released Canfield and Duckett on writs of habeas corpus, one of whom had been committed by a justice of the peace and the other by a so-called "liquor mayor."

In releasing these relators this court held that the mayor and magistrate, by whom they were committed were disqualified to act as judges by virtue of the Supreme

Court decision; that this disqualification emphatically denies jurisdiction to all justices and to mayors pecuniarily interested; that the assumption of jurisdiction by such a mayor or a justice of the peace is a denial to a defendant of his constitutional right to "due process of law;" and that this affects the entire jurisdiction of such mayor or magistrate of the subject matter as well as the person. This court, therefore, held that habeas corpus was a proper remedy for the reason that the proceedings before the justice of the peace and the mayor, respectively, were void *ab initio*.

In the instant cases briefs have been filed by counsel for relators and, on behalf of respondent, by the Attorney General of Ohio, city solicitor of Washington C. H., and general counsel for the Anti-Saloon League of Ohio.

Inasmuch as counsel have briefed and discussed the same legal propositions which were decided in the Canfield and Duckett decision, the court refers counsel to same and will thus attempt to avoid repetition herein.

The petitions for the writs having been filed by the seven relators, the court instead of releasing them in accordance with the Canfield and Duckett holding, assigned the cases for hearing at a date agreeable to all, counsel for respondent contending that the mayor's court of Washington C. H., was not within the catagory of "interested courts" mentioned by the Supreme Court in the Tumey decision.

Upon this point, therefore, evidence was introduced by counsel for both sides.

This evidence established that the present mayor, R. G. Allen, who was present at the habeas corpus hearing and testified, has been mayor for three years and four months; that he served on an annual salary of twelve hundred dollars and received no other compensation or emolument; that during his term of office he had entertained jurisdiction of 724 criminal prosecutions; that arrests were made outside the corporation and throughout the county; that the sheriff of the county filed his prosecutions in said mayor's court and that the prosecuting attorney of the county most generally did likewise; that the city government was based upon the federal plan which makes the mayor, by virtue of his office, the chief executive and

legislative head, and that an ordinance had been passed similar to the Crabbe act which permitted the mayor to retain for the city all fines for violation of the liquor traffic, instead of one-half the fine where violations were prosecuted under the Crabbe act.

This testimony of Mayor Allen convinces the court that aside from salary, Mayor Allen's "interest" differed from that of the mayor of North College Hill in the celebrated. Tumey case in but one particular, namely, that Mayor Allen did not have as his field of forage a populous county containing a city such as Cincinnati. In other words the mayor of Washington C. H. was correspondingly limited in his ability to obtain revenue for his municipality by reason of Fayette county having much less population than Hamilton county.

Other evidence, adduced at the hearing and which counsel for respondents now assert is incompetent, convincingly disclosed the "interest" of Mayor Allen. It was testified that Mayor Allen conducted his cases at night between the hours of 10:30 p. m. and 1 a. m., and this regardless of when the arrest was made; that no formal arraignment was had and no formal plea asked; that when defendant asked for counsel he was told that all lawyers were in bed and when the defendant protested and asked for a trial he was told by Mayor Allen, "You are having a trial now and don't know it."

Mayor Allen sat throughout the habeas corpus hearings and did not resume the witness stand to deny this revolting testimony, which clearly indicates that the inquisitions before him were strikingly similar to the sessions of the infamous Star Chamber.

The Attorney General of Ohio in a letter which accompanied his brief states:

"As indicated therein our position is not that of defending the practices in Mayor Allen's court, but merely the application of the law to the issues presented on habeas corpus.

"If these applications were petitions in error and the evidence that was adduced before you was found to be substantially the truth, it would be my position to recommend that the judgments of the mayor be reversed and the defendants discharged."

Obviously impressed with the injustices committed by the mayor, the attorney general takes the stand with other counsel for respondent. in asking that this court. sanction and continue the injustice by denying relators release on habeas corpus on the technical proposition that it is not the proper remedy.

It is conceded that habeas corpus is now the only available. remedy whereby relators can or may obtain their liberty from an unjust and arbitrary assumption of judicial authority.

Counsel for the Anti-Saloon League in their brief join the Attorney General in his technical proposition and say:

"The vice, though, when at the outset of the trial no objection is made as to the disqualification of the magistrate or his jurisdiction over the defendant, or no question is raised as to the constitutional right of a fair trial, is not of such a character as to deny due process of law and prevent a fair trial. In such an event, the constitutional right and disqualification is waived by the defendant and he submits himself to the jurisdiction of the magistrate."

How utterly absurd is the contention that these relators should have objected at the time, and that they waived their constitutional rights by not so objecting and then carrying the case to a higher court by petition in error.

Before this Martinet, of what avail would have been any objection? Emphatically. denied counsel and trial, their objections would have been as little heeded as the prayers of the poor wretch who is dragged from jail by a mob and hung at the nearest convenient tree.

This court is not concerned with the guilt or innocense of relators. The practices of the court, in which they were accused and entitled to a fair and impartial trial, can not be justified by the contention that they were guilty and deserving of punishment. The fact remains that guilt was not established nor was innocence permitted to be pleaded. With such oppressive and tyranical conduct on the part of a trial court, what chance. would any person have however innocent he might be of the crime charged against him?

As hereinbefore stated the legal propositions of counsel have been decided in the Duckett-Canfield decision. Habeas corpus is the proper remedy and relators are released.